```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/15/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Artilla Shrease McMillian,                          :
                                                    :
                        Plaintiff,                  :
                                                    :
            -against-                               :
                                                    :
Commissioner of Social Security,                    :
                                                    :
                        Defendant.                  :
------------------------------------------------------------X

**OPINION**

1:20-CV-7626 (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Artilla McMillian ("Plaintiff"), represented by counsel, commenced this action against Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff seeks review of the Commissioner's decision that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act from December 28, 2015, the onset date of her alleged disability, through the date of the decision, May 30, 2019.

For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS the Commissioner's motion for judgment on the pleadings.

**BACKGROUND**

Plaintiff, who was born on February 16, 1977, is married but separated and lives with her two children – ages nine and four.  Plaintiff has a GED and completed one year of college. Plaintiff primarily worked as a certified nursing assistant and direct care counselor/ personal care aide.  On December 28, 2015, while working as a direct care counselor, Plaintiff hurt her back when she was lifting a heavy client from the bed to a wheelchair.   Two days later, Plaintiff went to Urgent Care and was told that she had a sprained back.  She was sent for a magnetic

resonance imaging scan ("MRI") of the lumbar spine.  Plaintiff says that she has been diagnosed with lumbar spine impairment (back injury), knee impairment, asthma, allergies, migraines, depression, anxiety, and bipolar disorder and, as a result, is unable to work in any job.

      1.   *Procedural History*

On September 12, 2017, Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income alleging disability due to the above-described medical conditions.  Plaintiff's claims were denied after initial review on December 14, 2017.  At Plaintiff's request, a hearing before Administrative Law Judge ("ALJ") Kimberly L. Schiro was held on March 12, 2019.  Plaintiff appeared with counsel and testified at the hearing.  Vocational Expert ("VE") Michael Smith did not testify, but provided written responses to interrogatories submitted to him by the ALJ.  On May 30, 2019, ALJ Schiro denied Plaintiff's application for benefits.  Plaintiff appealed, and on July 15, 2020, the Appeals Council denied a request for review, making the ALJ's decision the final Agency decision.  This action followed.

Plaintiff commenced this action on September 17, 2020, contending that: (1) the ALJ's Residual Functional Capacity ("RFC") determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of Dr. Oshidar (her chiropractor); and (2) the ALJ failed to properly incorporate Plaintiff's mental limitations into the RFC.  (ECF No. 27.)  The parties submitted a Joint Stipulation ("J.S.") in lieu of cross-motions for judgment on the pleadings (*Id*.), pursuant to this Court's Order at ECF No. 25.

2.  *The Commissioner's Decision*

ALJ Schiro found that Plaintiff has the following severe impairments: osteoarthritis of the left knee, lumbar impairment, asthma, depression, anxiety, bipolar disorder, and obesity, and noted that these "impairments significantly limit the ability to perform basic work activities as required by [the regulations]." (A.R. 13.)  However, at step three of the sequential analysis, ALJ Schiro determined the Plaintiff's impairments did not meet or medically equal the criteria of Listings in 1.02, 1.04, 3.03, 12.04, 12.06, and 12.15, and also specifically analyzed the "paragraph B" and "paragraph C" criteria of the Listings related to the mental impairments. (A.R. 14-15.)  In making this determination, ALJ Schiro found that Plaintiff did not suffer from at least one extreme or two marked limitations in the listed mental functional areas.  (A.R. 15.) Rather, ALJ Schiro found the Plaintiff had a moderate limitation in understanding, remembering, and applying information; in interacting with others; in concentrating, persisting, and maintaining pace; and a mild limitation in adapting or managing herself.  (A.R. 14-15.)

While acknowledging her mental impairments and symptoms, the ALJ nonetheless concluded that Plaintiff retained the RFC to:

> Perform simple, routine sedentary work . . . except she cannot climb ladders, ropes or scaffolds or work around hazards, which [the ALJ] defined as moving mechanical parts or at unprotected heights. She can occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl. She cannot have concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. She can have occasional contact with coworkers and supervisors, but no work-related contact with the public. She must stand and stretch for one to two minutes after sitting for one hour. She must use a cane for ambulation.

(A.R. 16.)  This assessment was based on a full review of Plaintiff's medical records, including

treatment notes from Plaintiff's treating providers, and her symptoms over time.  (A.R. 16.)  ALJ

Schiro found that Plaintiff's description of the limitations caused by her impairments were not

as intense, persistent, or functionally limiting as she testified at the hearing given her reports to

her doctors over time and the information from the various providers and consultants in the

record.  (A.R. 17-20.)  At step five, ALJ Schiro found that considering Plaintiff's age, education,

work experience, and RFC, and relying on the VE's written responses to the vocational

interrogatories, there are jobs "in significant numbers in the national economy that the

[Plaintiff] can perform" such as eye glass frame polisher, document preparer, or addresser.

(A.R. 22.)  Thus, ALJ Schiro found that Plaintiff had not been disabled since December 28, 2015

through the date of the decision.  (A.R. 23.)

## DISCUSSION

### 1.  Standard of Review

In its review, the Court has applied the frequently reiterated standards for entitlement

to Social Security disability benefits, review of a denial of such benefits, consideration of

motions for judgment on the pleadings, examination of the procedures employed, the

substantial evidence standard of review and deference accorded to ALJ decisions, evaluation of

vocational evidence, and the evaluation of mental impairments as amended by the new

regulations in 2017.  These standards, along with numerous authorities and citations, are

discussed at length, merely by way of example, in *Vellone v. Saul*, 2021 WL 319354, at *1

(S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom., Vellone on behalf of*

*Vellone v. Saul,* 2021 WL 2801138 (S.D.N.Y. July 6, 2021), which discussion is hereby incorporated by reference.

### 2. Analysis

The sole legal question here is whether Plaintiff's RFC is supported by substantial evidence. Specifically, Plaintiff contends the ALJ failed to both properly evaluate the opinion of Dr. Oshidar when determining Plaintiff's RFC and incorporate documented and supported mental limitations into the RFC. After carefully reviewing the entire record, the ALJ's RFC analysis was supported by substantial evidence and is consistent and supported by medical evidence in the record, as required by the new regulations.

### a. Dr. Oshidar, Plaintiff's Chiropractor

Plaintiff alleges that the ALJ failed to incorporate or consider Dr. Oshidar's medical reports and therefore the ALJ's RFC could not be supported by substantial evidence. Specifically, Plaintiff argues that the ALJ discounted Dr. Oshidar's opinion when Dr. Oshidar declared Plaintiff was "totally disabled;" that the ALJ was obligated to contact Dr. Oshidar to address any vagueness regarding his recommended lifting restriction – which was explained not limited by weight but rather as no more than "a grocery bag;" that the ALJ failed to consider all evidence by cherry-picking only Dr. Oshidar's findings regarding Plaintiff's lower extremity strength; and that the ALJ's error was not harmless. None of these arguments are meritorious.

First, the ALJ correctly noted that Dr. Oshidar's statement that Plaintiff was "temporarily totally disabled" or that she "could not return to work" are issues reserved to the Commissioner, and therefore those portions of Dr. Oshidar's medical reports (A.R. 311, 315,

523, 521) are not entitled to special significance because they did not establish that Plaintiff

had a disability under the Act.  *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (explaining that a

statement by a medical source that a claimant is "disabled" is a statement on an issue reserved

to the Commissioner, and not an opinion which can be binding thereon, or given controlling

weight or special significance).  Though conceding this point, Plaintiff argues that nonetheless

the ALJ should still have considered other aspects of Dr. Oshidar's opinion and records and

given them more weight in arriving at the RFC.

It is clear, however, that the ALJ did consider Dr. Oshidar's opinion and records.  For

example, the ALJ explained that other findings in Dr. Oshidar's medical report, such as his

weight restriction limitations or other physical limitations (such as: no bending more than 5

minutes, no climbing, and no sitting standing in one position for more than 15 minutes) were

not consistent with his own examination, which revealed largely normal lower extremity

strength even before Plaintiff had engaged in treatment.  (A.R. 311, 315, 523, 521)  The ALJ

noted that Dr. Oshidar indicated Plaintiff was expected to experience favorable results from

treatment and be able to return to work.  In other words, she highlighted that Dr. Oshidar

overstated Plaintiff's limitations and yet at the same time provided a prognosis that suggested

that her treatment would improve with physical therapy.  Also, the ALJ found that Plaintiff's

limitations were inconsistent with other medical evidence in the record, including a normal

lumbar spine and an MRI that revealed only mild degenerative disc disease with no disc

herniation, spinal canal, or neuroforaminal compromise, as well as examination strength and

range of motion findings of her neurologist Dr. Kinon and report that she experienced

functional improvement with chiropractic care.  Although Plaintiff had some weakness in her

knee flexors in 2016, she underwent left knee surgery in January 2017 and by July 2017 had

normal gait and strength and reported that cortisone injections gave her good relief.  The ALJ

also noted that the surgery did not provide full relief and that the Plaintiff underwent a second

surgery in 2018, after which she had only mild knee discomfort.  In other words, the ALJ

weighed all the evidence regarding Plaintiff's lumbar and knee conditions over time and found

that Dr. Oshidar's opinions were less persuasive given his own examination findings and the

findings of other providers.  Under the new regulations, the ALJ "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion or prior

administrative medical finding, including those from [the claimant's own] medical sources."  20

C.F.R. § 416.920c(a), (2017); *see also Bonet ex rel. T.B. v. Colvin*, 523 F. App'x. 58, 59 (2d Cir.

2013) ("[w]hether there is substantial evidence supporting the appellant's view is not the

question here; rather, we must decide whether substantial evidence supports the ALJ's

decision" (citation omitted)).  Further, the ALJ was entitled to weigh the evidence in arriving at

an RFC and properly discussed the extent Dr. Oshidar's opinion was supported by his own

examination findings and consistent with other medical evidence.  *See* 20 C.F.R. §§

404.1520c(c)(1), 416.920c(c)(1); *See, e.g., Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *3

(W.D.N.Y. 2019) ("[c]ontrary to [claimant's] assertion, the ALJ did not wholly reject [the

doctors'] opinions; instead, she afforded them 'partial' and 'some' weight and . . . relied on

portions of them to determine [claimant's] RFC[;] . . . [j]ust because the ALJ did not afford

either opinion controlling weight does not mean that she substituted her own view of the

medical evidence for those opinions"); *see also Harris v. Berryhill*, 2017 WL 4112022, *3

(W.D.N.Y. 2017) ("[p]laintiff contends that the ALJ improperly 'rejected' [the doctors'] opinions

[which the ALJ afforded 'less than significant weight'] without citing to another medical

opinion[;] [p]laintiff overstates the ALJ's actions[;] [t]he ALJ did not 'reject' these opinions[;] [t]o

the contrary, he gave them some weight and incorporated certain of the limitations set forth

therein into his RFC finding"); *Bockeno v. Comm'r of Soc. Sec.*, 2015 WL 5512348, *5 (N.D.N.Y.

2015) ("the ALJ did not outright reject [the doctor's] opinion, but afforded his opinion 'little

weight'[;] [t]he ALJ's RFC determination includes non-exertional mental limitations, some of

which are consistent with the limitations imposed by [the doctor] and supported by other

medical evidence in the record").

  Plaintiff erroneously argues that the ALJ was obligated to contact Dr. Oshidar to

understand what was meant by the lifting restriction of "a grocery bag."  Contrary to Plaintiff's

argument, the ALJ had no obligation to develop the record further "when the evidence already

presented is 'adequate for [the ALJ] to make a determination as to disability.'"  *See Janes v.

Berryhill,* 710 F. App'x 33, 34 (2d Cir. Jan. 30, 2018).  The ALJ had ample evidence that Plaintiff

was capable of the minimal lifting requirements of sedentary work from state agency reviewing

medical consultant Annamalai Periakaruppan MD who found that "claimant could perform

sedentary exertion with occasional postural activities" and from internal medicine examiner

John Fkiaras MD who found that "claimant had a moderate to marked limitation for heavy

lifting" and thus did not need to supplement that information.  *See Morris v. Berryhill*, 721 F.

App'x 25, 27 (2d Cir. 2018) (holding that ALJ had no obligation, even for *pro se* claimant, to

clarify opinion that claimant was "moderately limited" where record was otherwise sufficient to evaluate doctor's opinion and claimant's functional status).  Additionally, the ALJ accommodated any strength findings that deviated from Plaintiff's medical reports by only limiting Plaintiff to sedentary work.  *See Curry v. Comm'r of Soc. Sec.,* 855 F. App'x 46, 49 (2d Cir. 2021) (The Second Circuit found that normal strength findings support an RFC determination that Plaintiff could perform work even *above* the sedentary level).

Finally, Plaintiff argues that the ALJ cherry-picked by citing only Plaintiff's lower extremity strength in discounting Dr. Oshidar's opinion.  Dr. Oshidar's reports show that he completed a general physical examination of Plaintiff that consisted of a deep tendon reflex exam, range of motion tests, and nerve related examinations.  Additionally, Dr. Oshidar completed a number of lower extremity tests of Plaintiff's right and left side body parts including the hip, knee, ankle and foot.  Lastly, Dr. Oshidar completed a number of evaluations to assess Plaintiff's lower back pain such as Lumbar Lesion Tests (Low Back Hyperextension Test), Low Back nerve root compression tests, straight leg raise tests and other tests of the lower spine.  It is fair to say that every report by Dr. Oshidar focused on Plaintiff's lower extremity strength.  Notably, Dr. Oshidar also stated that he expected Plaintiff to improve with treatment of therapeutic exercise, endurance exercises, and reduced usage of prescription medications.  (A.R. 311, 315, 523, 521.)  Also, Plaintiff had no ongoing back treatment and denied further back symptoms following Dr. Oshidar's appointments.  Therefore, to argue that the ALJ cherry-picked only examinations of Plaintiff's lower extremity strength is inaccurate.

Overall, the ALJ's RFC with respect to physical limitations is supported by substantial evidence. In large part, Plaintiff's history of medical treatment stems from lower back pain that radiates down to her knee. Plaintiff's medical reports begin in early 2016 when an MRI of her lumbar spine revealed mild generative disc disease, but no disc herniation, spinal canal or neuroforaminal compromise. (A.R. 301.) Throughout 2016, Plaintiff visited various doctors, including Dr. Iyer, Dr. Krishna, Dr. Jain, and Dr. Oshidar, for complaints of lower back pain that radiated down to her knee, as well as asthma, migraines, allergies and congestion. (A.R. 311, 315, 320, 512, 521, 523, 527, 528, 562.) In August of 2016, nerve conduction studies were conducted which revealed normal latencies, amplitudes and conduction velocities that were all within normal limits. (A.R. 512, 527.) All doctors determined that a chiropractic rehab plan would help with the pain and prescribed Motrin. Plaintiff decided that she was still in chronic pain and wanted to get knee surgery. Thereafter, on January 26, 2017, Plaintiff had knee surgery. (Ex. 14F, p. 7.)

After surgery, the ALJ cites to the subsequent medical treatment notes and evaluations, which all noted improvements in Plaintiff's back and knee pain; largely normal strength findings; that if Plaintiff had any back pain, it was controlled by ibuprofen or motrin; and Plaintiff's medical complaints centered around other maladies such as arthritis, asthma, obesity, sinus congestion, and earaches.[1] While no medical reports suggested a need to limit

---

[1] *See* A.R. 591 (March 1, 2017 - "now walking well, no pain in her knees; wants to prevent the knee from worsening again from her weight."); A.R. 600 (May 24, 2017 – "seasonal allergic rhinitis, moderate persistent asthma without complication"); A.R. 611 (June 28, 2017 – "takes one 800 mg tablet at night for pain – doing well on that.") ("Asthma attack" taking prednisone, Symbicort twice a day and albuterol as needed"); A.R. 620 (August 2, 2017 "still having migraines every other day lasting most of the day") ("Chronic back pain as well, ibuprofen somewhat helping but doesn't like having to take it a few times a day; has been losing weight to try to help the pain."); A.R.

Plaintiff's physical RFC with her additional maladies, nevertheless, the ALJ provided for additional limitations in light of Plaintiff's allergies, and asthma by limiting her exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. (A.R. 530, 532, 533, 534, 535, 540.)

Additionally, the ALJ considered Plaintiff's testimony in constructing the RFC, which detailed that she volunteered at a school, performed daily living activities independently, cared for her children and went grocery shopping.  Given her range of daily activities, the ALJ did not find that she had a disability that precluded substantial gainful employment of a sedentary nature.  *See Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) ("While Prince definitely reported pain, in both his testimony and some supporting medical documents, 'disability requires more than mere inability to work without pain.  To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'") (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983))). Nevertheless here to, the ALJ credited Plaintiff's testimony and included additional limitations in the RFC by allowing her to stand and stretch for one to two minutes after sitting for one hour and use a cane for ambulation.  In all, the ALJ appropriately considered the medical record as a

---

706 (September 11, 2017 – "Follow-up for her left knee. History of arthritis. She saw my partner Dr. Blum who thought she does not need a patellofemoral replacement. She is here for review. . . Otherwise stable knee."); A.R. 484 (October 16, 2017 – Plaintiff came in for a sinus congestion; all exams normal; prescribed ibuprofen); A.R. 484 (January 20, 2018 – "Patient comes in today for a Earache; all exams were normal; prescribed ibuprofen."); A.R. 490 (January 27, 2018 – "Patient comes in today for a Cough and back pain; all exams were normal except an abnormal test for oral pharynx; prescribed acetaminophen."); A.R. 495 (February 17, 2018 – "Patient comes in for an Earache; all exams were normal); A.R. 498 (April 22, 2018 – "Patient comes in today for a sore throat and back pain; all exams were normal; abnormal exam for oral pharynx; prescribed amoxicillin and ibuprofen.")

whole, Plaintiff's past injury, as well as the subsequent chronic pain and treatment that accompanied it to provide an RFC that allowed a sedentary range of work.

### b. *Plaintiff's Mental Limitations in the RFC*

In addition to failing to take into account her chiropractor's statements about the severity of her limitations in the RFC, Plaintiff also argues that the RFC fails to take into account her moderate limitations in two of the four broad mental functional areas – understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace.[2]

To assess the four broad mental functional areas, the ALJ must apply the degree of limitations using a five-point scale consisting of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4).  The regulations are clear that the limitations identified in the "paragraph B" and "paragraph C" criteria are *not* an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation processes.  SSR 96-9p. 1996 WL 374184, at *4.  When considering the "paragraph B" criteria, the ALJ is to consider "all of the relevant medical and non-medical evidence in [the] case record to evaluate [Plaintiff's] mental disorder."  Importantly, the burden to demonstrate functional limitations is the Plaintiff's.  *See Reynolds v. Comm'r of Soc. Sec.*, 2019 WL 2020999, at *4 (W.D.N.Y. May 8, 2019).  Contrary to Plaintiff's claims that the ALJ did not explain how she incorporated the moderate limitations assessed in the RFC finding, a review of the ALJ's decision shows

---

[2] The Social Security Administration made changes to the listings used to evaluate claims involving mental disorders.  Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016).  These rules went into effect on January 17, 2017 and the four functional areas became (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 416.920a(c)(3).

otherwise.  *See Gary H. v. Comm'r of Soc. Sec.,* 2020 WL 7239821, at *1 (W.D.N.Y. 2020) (The

court affirmed the ALJ's findings where the ALJ properly relied on medical records and

plaintiff's own testimony in determining that the record supported moderate limitations in the

four broad functional areas.); *Sipe v. Astrue*, 873 F. Supp. 2d 471, 480 (N.D.N.Y. 2012) (holding

that plaintiff could perform unskilled work based on the testimony of plaintiff, as well as

medical opinions of consultative examiner and other doctors who found mild and moderate

limitations in all relevant areas).

      In the domain of understanding, remembering, or applying information, the ALJ cited to

medical records in 2017 from psychiatrist Arlene Broska (Ph.D.), psychiatric evaluations and

visits from January 2018 through January 2019 from Dr. Bondoc, and one opinion from

consultative examiner Dr. Fkiaras in 2017.  (A.R. 455-458; 459-462; 530-540.)  Collectively,

Plaintiff's mental status examinations provide no evidence that Plaintiff has any limitations in

her understanding or ability to remember information.  All medical reports illustrated that

Plaintiff's memory is intact and noted that she is estimated to be in the average range of

intellectual functioning with general fund of information appropriate to experience.  (A.R. 460.)

Similarly, in the domain of concentrating, persisting, or maintaining pace, the ALJ relied on

medical reports that ranged from June 2016 through January 2019 from Drs. Kinon and Bondoc

and Arlene Broska (Ph.D.) to conclude that Plaintiff consistently denied problems paying

attention and described her attention and concentration as "normal."  (A.R. 302-306; 459-462;

530-540.)  Plaintiff's thinking was coherent and goal directed, and her attention and

concentration were intact.  Additionally, the above-mentioned doctors' reports noted that

13

Plaintiff could count and perform simple calculations, and also noted that Plaintiff dresses,

bathes, and grooms herself every day, cooks three times a week, cleans three times a week,

does laundry every two weeks and shops once a month.  (A.R. 460, 461.)  The "ability to

maintain a regular schedule falls under the category of concentration and persistence."  *Andrea*

*N. v. Saul*, 2020 WL 1140512, at *5 (N.D.N.Y. Mar. 9, 2020).

　　　　To further analyze both domains, the ALJ looked to Plaintiff's testimony about her daily

activities.  While Plaintiff testified that she had a problem concentrating, Plaintiff also noted

that she could perform childcare, light housework, read, and write short stories, which suggests

that she was able to maintain a regular schedule and concentrate.  *See Monroe v. Comm'r of*

*Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on activities of daily

living to formulate the RFC assessment).  The ALJ nonetheless credited in part Plaintiff's

testimony that she has trouble remembering things and problems concentrating by limiting her

to simple, routine tasks.

　　　　To the extent Plaintiff argues that the ALJ erred by using the "simple, routine tasks"

language as a coverall, Plaintiff's argument fails.  While the Social Security regulations do not

provide a standard definition of the term 'moderate,' *See Brierley v. Saul*, 2020 WL 709609, at

*5 (W.D.N.Y. Feb. 12, 2020), the Second Circuit has held that a moderate limitation in the area

of concentration, persistence, or pace does not preclude the ability to perform unskilled work."

*Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017).  The Social

Security Administration's own regulatory guidance indicates that the basic abilities of unskilled

work include (a) understanding, remembering, and carrying out simple instructions, (b) making

14

simple work-related decisions, (c) responding appropriately to supervision, co-workers and usual work situations, and (d) dealing with changes in a routine work setting.  SSR 96-9p; 20 C.F.R. §§ 404.1568, 416.968.  In addition, unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people."  SSR 85-15, Titles II & XVI: Capability to Do Other Work The Medical Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857 *4 (S.S.A. 1985).  Because the RFC limitation essentially limited Plaintiff to simple, routine tasks – and "occasional contact with coworkers and supervisors, but no work-related contact with the public" given Plaintiff's own testimony that she does not like people – the RFC language appropriately determined Plaintiff's abilities to perform this kind of work.  Accordingly, in finding moderate limitations, the ALJ did not err in limiting Plaintiff to "simple, routine tasks," nor was it applied as a "coverall."  Courts in this Circuit have found that a similar limitation is appropriate when a person has moderate limitations in these two mental functioning areas.  *See Darnell J. v. Comm'r of Soc. Sec.*, 2021 WL 1405853 (W.D.N.Y. Apr. 14, 2021) (The court affirmed the ALJ's decision, finding that it appropriately incorporated the moderate limitations in the RFC when the ALJ limited Plaintiff to simple instructions and making only simple decisions.); *Nathan P. v. Comm'r of Soc. Sec.,* 2021 WL 1139849 (W.D.N.Y. Mar. 25, 2021) ("More specifically, a moderate limitation in a plaintiff's ability to accept instructions and respond appropriately is consistent with an RFC limiting plaintiff to unskilled work."); *Gonzalez v. Saul*, 2021 WL 37695, at *6 (W.D.N.Y. Jan. 5, 2021) (affirming ALJ where Plaintiff had a moderate limitation in concentration and attention and understanding simple directions and instructions and the ALJ limited claimant to simple routine tasks); *Gomez v. Comm'r of Soc. Sec.,*

15

2020 WL 1322565, at *4-5 (W.D.N.Y. Mar. 20, 2020) (residual functional capacity that limits claimant to simple routine tasks accounts for moderate-to-marked limitations); *Anna M.S. v. Saul*, 2020 WL 2543044 (N.D.N.Y. May 19, 2020) (affirming the ALJ's decision where RFC's limitation to simple work and simple tasks demonstrate a moderate limitation in understanding, remembering and carrying out simple instructions and making simple work-related decisions); *Morales v. Berryhill,* 484 F. Supp. 3d 130 (S.D.N.Y. 2020) (The Court held that a moderate limitation in the area of concentration, persistence, or pace is not inconsistent with an RFC to perform simple work); *Cummings v. Comm'r of Soc. Sec.*, 2018 WL 2209204 at *7 n.3 (N.D.N.Y. 2018) (Even a marked limitation is not inconsistent with the ability to perform unskilled work").  Thus, the ALJ reasonably accounted for the moderate limitations in the RFC finding by restricting Plaintiff to simple, routine tasks.

Plaintiff's reliance on *MacDonald v. Comm'r of Soc. Sec*. and *Mandy C. v. Saul and Mandy C. v. Saul*, is misplaced.  2019 WL 3067275, at *4 (W.D.N.Y. July 11, 2019); 2020 WL 1245348 at *4 (Mar. 16, 2020).  In *MacDonald*, the Plaintiff challenged the ALJ's RFC determination on the ground that it was formulated without any mental limitations.  In remanding, the court reasoned that the ALJ's trite analysis (approximately three short sentences without any citation to evidence) lacked a narrative discussion describing how the evidence supports each conclusion and determined that the Court could not conclude that the ALJ actually considered the plaintiff's mental issues when addressing her RFC.  The plaintiff in *Mandy* parroted the same arguments as the plaintiff in *MacDonald,* and the court, in reliance on *MacDonald*, remanded the case finding that the ALJ's reference to the standard set forth in

16

the regulations without more, is insufficient lip service and indicated the ALJ improperly

analyzed Plaintiff's RFC.  *Mandy C.*, 2020 WL 1244348 at *4 (Mar. 16, 2020).  Those cases are

distinguishable from the case here.  Here, the ALJ provided a thorough narrative discussion

(that spanned five pages) of each of Plaintiff's limitations, and cited specific medical opinions

and reports about Plaintiff's mental health records, credited nonmedical evidence (i.e.

Plaintiff's testimony about her daily activities and observations about herself) and described

how the evidence supported each conclusion.  *See Patterson v. Astrue*, 2013 WL 638617, at *1

(N.D.N.Y. Jan. 24, 2013) *report and recommendation adopted,* 2013 WL 592123 (N.D.N.Y. Feb.

14, 2013) (In affirming the ALJ's decision, the Court reasoned that in arriving at her RFC finding,

the ALJ engaged in a comprehensive discussion of the available evidence, extending over a

period of seven pages; therefore, while her decision could have included greater detail to

indicate consideration of the specific paragraph B criteria . . . it is apparent that she did

consider those factors and weighed them against the record evidence.)

Lastly, Plaintiff argues that the RFC omits corresponding limitations of her severe

impairments – depression, anxiety, and bipolar disorder.  The regulations instruct the ALJ to

"consider the combined effect of all the claimant's medically determinable impairments,

*whether severe or not severe*," 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d), and include a

narrative discussion describing how the evidence supports each conclusion, citing to specific

medical facts and nonmedical evidence.  SSR 96-8p.  Here, not only did the ALJ follow the

regulations, but also, the ALJ concluded that those impairments did not impose any additional

limitations that needed to be considered in formulating the RFC.  Specifically, the ALJ

17

considered the Plaintiff's routine mental health treatment from psychiatrists Dr. Broska and Dr.

Bondoc.  Importantly, from approximately February 2016 through April 2018, Plaintiff was not

on any medications for her mental health, and her mental status findings were consistently

normal.  The medical examination reports even suggest that she denied all anxiety, depression

from approximately February 2016 through January 2018 and that when she started to have

anxiety in March and April of 2018, Plaintiff attributed those symptoms to external stressors

related to financial obligations and irritability because of her knee.  Given these reports, the ALJ

determined that there was no need for additional limitations in Plaintiff's RFC beyond regularly

scheduled breaks and routine simple tasks with limited interaction with the public and

coworkers.  Further, should Plaintiff have needed greater mental restrictions, Plaintiff should

have provided further evidence of such.  The ALJ did not err in concluding that the mental

health treatment records did not support further restrictions. *See Smith v. Berryhill*, 740 F.

App.'x 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive

RFC than the ALJ found).

At bottom, the evidence the ALJ considered is sufficient for "a reasonable mind to

accept the conclusion[ ] reached by the Commissioner," *Silvers v. Colvin,* 67 F. Supp. 3d 570,

574 (W.D.N.Y. 2014) – that is, that the Plaintiff's mental impairments did not result in any

limitation that must be accounted for in the Plaintiff's RFC apart from limiting the Plaintiff to

simple, routine tasks and occasional contact with co-workers and supervisors, and no contact

with the public.  *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) ("[t]he Step Four

residual functional capacity finding did not explicitly include [the plaintiff's] non-exertional

functional limitations.  However, Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence.")

At bottom, the substantial evidence standard is very deferential and can be rejected only if a reasonable factfinder would have to conclude otherwise.  *Brault v. Soc. Sec. Admin., Comm'r.,* 683 F.3d 443, 448 (2d Cir. 2012).  Here, I find that the decision was supported by substantial evidence, and thus the ALJ's decision should not be disturbed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and Defendant's motion for judgment on the pleadings is GRANTED.

Dated: February 15, 2022
       New York, New York

KATHARINE H. PARKER
United States Magistrate Judge

19